**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MATTHEW J. FARRARA,**

**Plaintiff,**

**v.** **Case No. 8:26-cv-00275-AAS**

**FRANK BISIGNANO,**
**Commissioner of the Social**
**Security Administration,**

**Defendant.**
______________________________/

**ORDER**

Matthew J. Farrara requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the parties' memoranda, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

On March 14, 2022, Mr. Farrara filed an application for DIB, with an alleged disability onset date of December 10, 2019. (Tr. 192–98). Mr. Farrara's claims were denied initially and on reconsideration. (Tr. 95–127). Mr. Farrara

requested a hearing before an ALJ. (*Id.*). The ALJ held an administrative hearing and, on May 16, 2025, issued a decision finding Mr. Farrara not disabled. (Tr. 14–69). Mr. Farrara filed a request for review of the ALJ's decision, which the Appeals Council denied on December 23, 2025. (Tr. 1–6). The hearing decision then became the Commissioner's final decision. *See* 20 C.F.R. § 404.900(a)(5). Mr. Farrara now requests review of the Commissioner's final decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Mr. Farrara was 51 years old on his date last insured and 54 years old on the date of the ALJ's decision. (Tr. 26, 28). Mr. Farrara completed high school and has no past relevant work experience. (Tr. 235). Mr. Farrara alleged disability due to chronic pain, Lyme disease, torn labrums, spine misalignment, fatigue, anxiety, depression, migraines, and short-term memory loss. (Tr. 234).

### B. Summary of the ALJ's Decision

To determine whether a claimant is disabled, the Social Security Regulations prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)). Under this process, an ALJ must assess whether a claimant: (1) is performing substantial gainful activity; (2) has a severe

impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)); 20 C.F.R. § 404.1520(a)(4). Although a claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, a claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

Here, at step one of the sequential evaluation process, the ALJ found that Mr. Farrara had not engaged in substantial gainful activity from his alleged onset date of December 10, 2019, through his date last insured of December 31, 2022. (Tr. 20). At step two, the ALJ found that Mr. Farrara had these severe impairments: disorders of the skeletal spine, depressive disorder, and anxiety disorder. (Tr. 20–21). At step three, the ALJ found Mr. Farrara

had not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21–23).

The ALJ then determined that Mr. Farrara had the RFC to perform light exertional level work,[1] with these additional limitations:

> [Mr. Farrara] can perform simple tasks. [He] can perform work involving only simple, work-related decisions and work involving few, if any, workplace changes.

(Tr. 21–26).

At step four, the ALJ found Mr. Farrara has no past relevant work. (Tr. 26). However, based on Mr. Farrara's age, education, work experience, RFC, and the testimony of the vocational expert (VE), the ALJ found at step five that Mr. Farrara could perform other work in significant numbers in the national economy, such as cleaner, marker, and laundry sorter. (Tr. 26–28). Thus, the ALJ found Mr. Farrara not disabled at any time from December 10, 2019, the alleged onset date, through December 31, 2022, the date last insured. (Tr. 28).

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted)

(stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B. Issues on Appeal

Mr. Farrara raises these issues on appeal: (1) whether the ALJ properly evaluated the opinions of Mr. Farrara's consultative examiner and psychologists; (2) whether substantial evidence supports the ALJ's step five finding that Mr. Farrara could perform other work; and (3) whether the ALJ was required to discuss Mr. Farrara's borderline age situation.

#### 1. Whether the ALJ properly evaluated the opinions of Mr. Farrara's consultative examiner and psychologists.

Mr. Farrara argues the ALJ erred in his evaluation of the opinion evidence of record, in particular the opinion of consultative examiner Andrea Pollack, D.O., and psychologists Alfred Vonetes, Psy.D., and Rofranna Parra-Stroda, Psy.D. (Doc. 11, pp. 7–12). In response, the Commissioner contends the ALJ properly considered this evidence, together with the other evidence of record, in assessing Mr. Farrara's RFC. (Doc. 16, pp. 5–13).

Before March 27, 2017, Social Security Administration (SSA) regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c). Under the treating physician rule, if an ALJ assigned less than controlling weight to

a treating physician's opinion, they had to provide good cause. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011). Here, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Mr. Farrara filed his claim on March 14, 2022, and alleged disability beginning December 10, 2019. The revised regulations eliminate the treating physician rule. *See Harner v. Comm'r of Soc. Sec.*, 38 F.4th 892, 897 (11th Cir. 2022).

The new regulations require an ALJ to apply the same factors when considering the opinions from all medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-02379-MGL-MGB, 2020 WL 376995, at *4, n.2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors . . . are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating their assessment of medical source opinions. An ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how they considered the supportability and consistency factors, the ALJ need not explain how they considered the

other three factors.[2] 20 C.F.R. § 404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ needs only to explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1). In general, "[c]ourts recognize the new regulations erect a framework that is highly deferential to the Commissioner." *Anthony v. Kijakazi*, No. CV-120-110, 2021 WL 4304725, at *4 (S.D. Ga. Sept. 3, 2021), *report and recommendation adopted*, 2021 WL 4304721 (Sept. 21, 2021).

The revised regulations also clarify how evidence from Federal and State agency medical and psychological consultants—now deemed prior administrative medical findings (except for the ultimate determination about disability)—is considered. Although an ALJ is not required to adopt prior administrative medical findings, the ALJ must consider this evidence in accordance with the Commissioner's regulations as appropriate, because Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation. 20 C.F.R. § 404.1513a(b)(1).

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. See 20 C.F.R. § 404.1520c(b)(3).

Mr. Farrara argues that the ALJ erred by failing to properly evaluate Dr. Pollack's opinion, which he issued on April 3, 2017, approximately 2.5 years before Mr. Farrara's alleged disability onset date of December 10, 2019. (Tr. 20, 455–58). The court disagrees and finds that the ALJ properly evaluated Dr. Pollack's opinion and found it was not persuasive because it was outdated and irrelevant to the period at issue. (Tr. 25). *See* 20 C.F.R. § 404.1520c(b)(2); *see also Santos v. Comm'r of Soc. Sec.*, 731 F. App'x 848, 856 (11th Cir. 2018) (holding the ALJ properly granted treating opinions little weight because the opinions were of "limited relevance to Santos's claims because they predated her alleged disability date"); *Stanford v. Berryhill*, No. 5:17-CV-01856-LSC, 2019 WL 1376713, at *7 (N.D. Ala. Mar. 27, 2019) (finding that substantial evidence supports the ALJ's decision to afford minimal weight to a medical opinion that predated the plaintiff's alleged disability onset date by two years); *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1296 n.4, 1303 n.9 (S.D. Fla. 2012) (explaining that medical records from before the relevant period were of "limited relevance" or were "not relevant to her current disability application").

Although the ALJ did not specifically use the terms "supportability" and "consistency," Social Security regulations do not require the ALJ to use any "magic language" or follow a particular formula when addressing the supportability and consistency factors. *See Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need

not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.") (internal citations omitted). Accordingly, the ALJ need not address the supportability and consistency factors separately if the analysis addresses the substance of both factors. *See Alvarez v. Comm'r of Soc. Sec.*, No. 20-cv-24711-Bloom/Otazo-Reyes, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022) (finding that the ALJ's simultaneous consideration of supportability and consistency factors was not improper) (citing, *inter alia*, *Thaxton*, 2022 WL 983156, at *8); *Rivera v. Kijakazi*, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) ("The articulation requirement is met so long as the evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation.") (citing *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021)).

The ALJ also properly considered the opinions from Dr. Vonetes and Dr. Parra-Stroda. (Tr. 25–26). Dr. Vonetes and Dr. Parra-Stroda noted that Mr. Farrara was cooperative, alert, fully oriented, had appropriate eye contact, depressed mood, his speech and thought were brief, and he denied having any delusions, hallucinations, or suicidal ideation. (Tr. 944–59). Dr. Vonetes and Dr. Parra-Stroda diagnosed Mr. Farrara with panic disorder, PTSD, depression, and substance abuse in remission. (*Id.*). The ALJ noted that

despite the mostly normal findings, Dr. Vonetes and Dr. Parra-Stroda opined Mr. Farrara had marked to extreme limitations in most areas of mental health functioning. (Tr. 25–26, 944–59). The ALJ noted that these opinions appear to be based on Mr. Farrara's subjective statements regarding his limitations.[3] (Tr. 26). The ALJ also found Dr. Vonetes's and Dr. Parra-Stroda's opinions were not supported by their own findings, are inconsistent with the record, and are inconsistent with the opinions of the state's mental health experts. (*Id.*). *See* 20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2). As such, the ALJ properly found that Dr. Vonetes's and Dr. Parra-Stroda's opinions were not persuasive.

When reviewing an ALJ's decision, the court's job is not to determine whether evidence in the record could support a different conclusion, but whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1154. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if the court finds the evidence preponderates against the ALJ's decision. *See*

[3] The ALJ found Mr. Farrara's subjective statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the record. (Tr. 24). The ALJ also found the severity of Mr. Farrara's subjective complaint and functional limitations are out of proportion with the objective findings and recommended course of treatment. (*Id.*).

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court concludes that the ALJ properly evaluated the opinions of consultative examiner Dr. Pollack and psychologists Dr. Vonetes and Dr. Parra-Stroda, and that remand is not required on this issue.

**2. Whether substantial evidence supports the ALJ's step five finding that Mr. Farrara could perform other work.**

Mr. Farrara argues that the ALJ's step five finding was not supported by substantial evidence because: (1) the job numbers provided were inconsistent with the data sources the VE relied on; (2) the marker job does not exist in significant numbers in the national economy; and (3) the job numbers the VE provided were not for the relevant time period. (Doc. 11, pp. 12–20). In response, the Commissioner contends that the VE's uncontradicted testimony constitutes substantial evidence supporting the ALJ's step five finding that Mr. Farrara could perform a significant number of jobs in the national economy. (Doc. 16, pp. 13–19).

In January 2025, approximately five months before the ALJ issued his decision, the agency issued a new ruling concerning vocational evidence, Social Security Ruling 24-3p.[4] 89 FR 97158-01, 2024 WL 5256890, at *1. The new

[4] SSR 24-3p went into effect on January 6, 2025, and it directs that "[w]e will use [it] beginning on its applicable date," and "[w]e will apply [it] . . . to claims that are pending on or after the applicable date." 2024 WL 5256890, at *2 n.1. "We expect that Federal courts will review our final decisions using the rules that were in effect at

ruling rescinds and replaces SSR 00-4p, which required ALJs to inquire about and resolve conflicts with the Dictionary of Occupational Titles (DOT). *Id.* The new SSR recognizes the DOT as a reliable source of vocational information but allows VEs to use other reliable sources, including those structured differently from the DOT. *Id.* at *3. At the hearing, VEs must identify the sources of the data they use and, where applicable, explain their general approach to estimating job numbers. *Id.* at *4. If the VE uses a source that defines exertion, skill, or education level differently than the agency, the VE must acknowledge and explain the difference. *Id.*

Here, the ALJ confirmed the VE's impartiality and qualifications. (Tr. 61). The ALJ asked the VE about a hypothetical individual with Mr. Farrara's vocational profile (age, education, work experience) and RFC. (Tr. 59–60). The VE then provided several examples of occupations the individual could perform: (1) housekeeper/cleaner, 90,000 jobs; (2) marker/pricer, 30,000 jobs; and (3) laundry sorter, 22,000 jobs. (Tr. 61).

Consistent with SSR 24-3p, the VE identified his sources and general approach for job number estimates. (Tr. 65–69). Specifically, the VE identified the DOT, the DOT Crosswalk to the Standard Occupational Classification system from O*Net, the Occupational Employment and Wage Statistics

the time we issued the decisions." *Id.* The decision here was issued on May 16, 2025. (Tr. 28).

database from the Bureau of Labor Statistics, which uses the Standard Occupational Classification System, the Occupational Outlook Handbook, and the North American Industry Classification System. (*Id.*).

Recent federal statistical data relating to work in the national economy use the Standard Occupational Classification (SOC) system, including the sources relied on by the VE—the Occupational Employment and Wage Survey and the Occupational Requirements Survey. SSR 24-3p at *5. As the agency explained in its new ruling, "one difference between the DOT and the SOC system is that the SOC system aggregates occupational data at a higher level. While some SOC codes correspond to a single DOT code, other SOC codes may correspond to a large number of DOT codes." *Id.* The VE should explain their general approach for comparing DOT-based data to SOC-based data. *Id.* "A detailed inquiry is not required." *Id.*

Here, the VE met these requirements. (Tr. 65–69). After identifying sources, the VE explained his general approach to estimating job numbers. The VE explained how he starts with an occupation in the DOT and then uses the DOT crosswalk to identify the appropriate SOC code. (*Id.*). After identifying the appropriate SOC code, the VE looks for other job titles within that code with similar job characteristics and physical and mental demands. (*Id.*). Based on these titles, the VE calculates the proportion of jobs in the overall count that are accounted for by these titles alone. (*Id.*). And the VE uses data from the

Occupation Requirement Survey to identify the percentage of jobs within exertion levels. (*Id.*).

When estimating numbers, a VE may draw on vocational knowledge and expertise, using a variety of methods, which can lead to substantially different estimates. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1284 (11th Cir. 2020). The Social Security Act does not "mandate a precise count of job numbers" or require a VE to "formulate opinions with more confidence than imperfect data allows." *Id.* A VE's testimony may fail to supply substantial evidence in support of an ALJ's unfavorable step five finding if the claimant demonstrates at the hearing that the expert's methodology is internally inconsistent and incomplete such that it lacks a "baseline of reliability." *Id.* at 1285. However, the Social Security regulations "do not require a [VE] to produce detailed reports or statistics in support of her testimony." *Bryant v. Comm'r*, 451 F. App'x. 838, 839 (11th Cir. 2012). Rather, "a [VE's] recognized expertise provides the necessary foundation for his or her testimony. No additional foundation is required." *See Leonard v. Comm'r*, 409 F. App'x 298, 301 (11th Cir. 2011).

In addition, SSR 24-3p provides that, when the claimant is represented at the hearing, the representative is expected "to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE." 2024 WL

4988840, at *97160. Consequently, Mr. Farrara forfeited any arguments about the reliability of the job numbers because he failed to object to the VE's testimony. (*See* Tr. 68); *see also Valdez v. Comm'r*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (finding the court was "foreclosed from considering the data in the occupational employment statistics on appeal" because the claimant failed to "present the occupational employment statistics before the ALJ or object to the vocational expert's testimony" at the hearing); *see also Posada v. Comm'r of Soc. Sec.*, No. 2:25-CV-634-NPM, 2026 WL 3150741, at *10 (M.D. Fla. Oct. 21, 2026).

The question is not whether substantial evidence supports the VE's testimony, but whether the VE's testimony supplies substantial evidence upon which the ALJ may base his decision. *Pace v. Comm'r*, 760 F. App'x 779, 781 (11th Cir. 2019). The VE's testimony was more than a scintilla that a reasonable person might accept to support the conclusion that a sufficient amount of work corresponded with Mr. Farrara's vocational profile. *See Biestek*, 587 U.S. at 105. As such, remand is not required on this issue.

**3. Whether the ALJ was required to discuss Mr. Farrara's borderline age situation.**

The SSA provides guidelines for evaluating whether a person can perform new jobs, which vary, in part, depending on the person's age category. Claimants under 50 years old are placed in the "younger person" age category.

20 C.F.R. § 404.1563(c). The next category, called "person closely approaching advanced age," comprises ages 50 to 54. *Id.* § 404.1563(d). Claimants aged 55 and older are considered "persons of advanced age." *Id.* § 404.1563(e).

If a claimant is unable to do his prior work, he will be considered disabled unless the defendant can show he can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). In cases in which a claimant has exertional limitations (meaning he is limited to either sedentary, light, or medium work), but no other limitations, an ALJ can rely exclusively on the rules known as the medical-vocational guidelines, or "grids," to determine whether the claimant can transition to new work. SSR 84-14, 1983 WL 31254, at *3. The grids are a collection of tables that determine whether a claimant is disabled or not disabled based on the claimant's exertional limitations, education, job skills, and age category. *See* 20 C.F.R Pt. 404, Subpt. P, App. 2.

However, many claimants, like Mr. Farrara, also have non-exertional limitations. SSR 84-14 at *1. "If non-exertional impairments exist, the ALJ may use Medical–Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a VE's testimony, of existence of jobs in the national economy that the claimant can perform." *Wilson v.* Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). In other words, "no table rule [or 'grid' rule] applies to direct a conclusion of 'Disabled' or 'Not disabled' where an individual has a nonexertional limitation.

In these situations, the table rules are used in conjunction with the definitions and discussions provided in the text of the regulations, as a framework for decision making."[5] SSR 84-14 at *1. Where, as here, a claimant's RFC and other vocational factors do not fit the criteria of a particular grid rule, the generally preferred course of action is to obtain testimony from a VE regarding whether other work exists that the claimant can perform, as the ALJ did here. (Tr. 27–28, 61–69).

Regardless of whether the grids are being used to direct a finding of disability, or as a "framework" alongside other evidence, an ALJ must determine a claimant's age category to decide which grid rule is applicable. A claimant's age category is important because there is a separate grid rule for each combination of age category, amount of experience, level of education, and exertional limitation. In some cases, a claimant's age category determines whether the grids dictate (or recommend) a disabled or not-disabled finding. If a claimant is in a "borderline age situation," the ALJ must "consider whether to use the older age category" – but only if a claimant is "within a few days to a few months of reaching an older age category, and using the older age

[5] The ALJ properly recognized Mr. Farrara's RFC precluded using the grids to direct a finding of disabled or not disabled, and he could use the grids only as a framework for his decision. (*See* Tr. 27); *see also* 20 C.F.R. §§ 404.1569, 404.1569a(d); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a), (b), (d), (e); *Wolfe v. Chater*, 86 F.3d 1072, 1077–78 (11th Cir. 1996).

category would result in a determination or decision that [she is] disabled." 20 C.F.R. § 404.1563(b).

Because Mr. Farrara was only 51 years old at the expiration of his date last insured, Mr. Farrara was years away from reaching the higher-age category. (Tr. 26). Moreover, simply using the older age category of advanced age would not result in a decision that Mr. Farrara was disabled because even if the grids proposed a finding of disability for the advanced age category here, the opinion would not require reversal on this basis. As the Eleventh Circuit clarified, an ALJ "could not have erred in failing to consider the borderline age situation" where the ALJ did not rely on the grids to direct a result, "but instead relied on VE testimony." *Pupo v. Commissioner*, 17 F.4th 1054, 1062 (11th Cir. 2021).

The ALJ properly found that the grids could serve only as a framework, and correctly developed VE testimony regarding whether Mr. Farrara could perform other jobs. Consequently, Mr. Farrara's case did not involve a borderline age situation. *See* POMS DI 25015.006C.2; HALLEX I-2-2-42B.1. Therefore, the ALJ was not required to consider whether to place Mr. Farrara in an older age category and properly used his chronological age.

## IV. CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**, and the Clerk of Court is directed to enter judgment in favor of the Commissioner

and close the file.

**ORDERED** in Tampa, Florida, on November 16, 2026.

Amanda Arnold Sansone

AMANDA ARNOLD SANSONE
United States Magistrate Judge